UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

In re:
Jeffrey Shuker and
Nicole Shuker,                                              Case No.: 9:10-bk-15523

    Debtors.                                              Chapter 7

Donald F. Walton, United States Trustee,

    Movant,

v.

Jeffrey Shuker and
Nicole Shuker,

    Respondents.
_____/

## MEMORANDUM OPINION

THIS CASE came before the Court for a final evidentiary hearing on the United States Trustee's Motion to Dismiss (Doc. No. 43) the Chapter 7 case of Jeffrey Shuker and Nicole Shuker (the "Debtors"). This Court makes the following findings of fact and conclusions of law.

## BACKGROUND

The Debtors filed their voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), on June 29, 2010. Donald F. Walton, United States Trustee (the "U.S. Trustee"), moved to dismiss the Debtors' case for abuse under Bankruptcy Code §§707(b)(1) and (3); however, this Court abated the motion to dismiss when the Debtors converted their case to a case under chapter 13.

On July 21, 2011, the Debtors reconverted their case to chapter 7 from chapter 13. The parties filed "Joint Stipulations" and a "Supplemental Stipulation of Facts."

**FACTS**

The Debtors are husband and wife who have three dependent children under the age of eighteen that live with them. Mrs. Shuker does not work. Mr. Shuker makes a gross salary of approximately $124,000 per year, although he indicated that prior to the economic recession, he earned approximately twice that. The Debtors also indicated that Mrs. Shuker is entitled to receive $548 per month in child support, but she has not received any payments in approximately one year. Despite their best efforts, the Debtors were unable to sell certain of their real estate.

The parties agree that the Debtors' debts are primarily consumer in nature, that is, debtors incurred by an individual primarily for personal, family or household purposes. 11 U.S.C. § 101(8). In their schedules, the Debtors declared that they had secured debt relating to home mortgages and auto loans, in the sum of $730,398 and unsecured debt of $1,042,072 which sum includes deficiency claims due secured creditors. This sum consists primarily of credit card accounts and deficiency claims. The Debtors filed an Amended Schedule of Unpaid Debts on August 29, 2011 showing 3 unpaid debts in the total amount of $21,250 incurred since the commencement of the case. The Debtors intend to surrender, or have already surrendered, all of their real property. They now rent their residence, for which they pay $1,595 per month.

The parties stipulated that the Debtors declared that there is one priority claimant with a debt consisting of child support in an amount that is unknown. But Schedule J includes an amount of $700 for "[a]limony, maintenance and support paid to others".

2

The parties also agreed that "[t]he Debtors owe federal income taxes from [the] 2010 tax year in the amount of $2,051.00."[1]

According to their Schedule I, the Debtors have an average combined monthly income of $8,240.93, including $548 that Mrs. Shuker is entitled to receive, but which she is not currently receiving. Mr. Shuker's current monthly income is stable. According to their Schedule J, they have $9,347.65 in monthly expenditures which, when reconciled with their stated income, yields a monthly deficit of $1,106.72.

## DISCUSSION

Section 707(b) of the Bankruptcy Code permits a court to dismiss the Chapter 7 case of an individual debtor whose debts are primarily consumer debts if it finds that granting of relief would be abusive. *Fokkena v. Chapman (In re Chapman),* 447 B.R. 250, 252 (B.A.P. 8th Cir. 2011). The court's determination that an abuse exists may be made under §§707(b)(2) or (b)(3). *Id.* Under §707(b)(2) a rebuttable presumption of abuse exists under a calculation that is often referred to as the "means test." "Under §707(b)(3), when considering whether an abuse exists, the court 'shall consider – (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." *Id. (*quoting 11 U.S.C. §707(b)(3)). The U.S. Trustee does not assert that the presumption of abuse arises in this case or that bad faith serves as an independent basis for dismissal.[2] This Court, thus, considers whether the totality of all the circumstances under §707(b)(3) demonstrates that the granting of relief would be an abuse of the provisions of Chapter

---

[1] The Debtors received $24,200 in tax refunds for tax year 2008, and $6,700 for 2009.
[2] Counsel for the U.S. Trustee has argued that alleged inconsistencies in the Debtor's schedule of expenses are indicative of "bad faith." However, at the final evidentiary hearing, the U.S. Trustee posited that §707(b)'s reference to bad faith does not create an independent basis for dismissing a case, but rather, is a factor to be considered in the totality of circumstances analysis.

7. The U.S. Trustee bears the burden of proof. *In re Brady*, 419 B.R. 479, 486 (Bankr. M.D. Fla. 2009).

**Totality of the Circumstances Analysis**

The primary consideration in the "totality of the circumstances" analysis is the debtor's ability to repay a portion of his debt. *In re Lavin,* 424 B.R. 558, 563 (Bankr. M.D. Fla. 2010). However, courts in the Middle District of Florida have required that the party seeking dismissal show something in addition to the debtor's ability to pay and courts have looked to various factors for consideration. *See Id.* Relevant factors cited include, but are not limited to:

> (1) Whether the bankruptcy filing was precipitated by an unforeseen or sudden calamity, such as an illness or unemployment; (2) Whether the debtor is eligible for Chapter 13 relief; (3) Whether the debtor has made any efforts to repay his debts or negotiate with creditors; whether there are non-bankruptcy remedies available to the debtor; or whether the debtor can obtain relief through private negotiations; (4) Whether the debtors could provide a "meaningful" distribution in a chapter 13 case; (5) Whether the debtor's expenses could be reduced significantly without depriving them and their dependents of necessities, including whether the debtor's schedules and statement of current monthly income and expenses reasonably and accurately reflect the true financial condition; (6) the period of time over which the debts were incurred; and (7) whether the debtor has a stable source of future income.

*Brady*, 419 B.R. at 486-87 (citation omitted). "Pre- and post-petition events are relevant to the analysis." *In re Ricci,* 456 B.R. 89, 102 (Bankr. M.D. Fla. 2009).

This Court considers the Debtors' ability to pay and additional factors, taking into consideration arguments made by the Debtors and the U.S. Trustee.

**Ability to Pay and Excessiveness of Family Budget**

Assessing a debtor's ability to pay under §707(b)(3) is a practical inquiry. The U.S. Trustee argues that "[b]y tightening the family budget regarding unnecessary,

4

duplicate, or excessive obligations, there would be [money] available to fund a repayment to the creditors." As shown herein, once the Debtors tighten their budget, they will be able to make a meaningful distribution to their creditors.

### Income

As explained above, the Debtors have considerable income from Mr. Shuker's job, which allows him to receive $7,692.93 monthly after payroll and similar deductions.

### Expenses

The Debtors' Schedule J shows expenses of $9,347.65. "[O]nly expenses reasonably necessary for the maintenance or support of the debtor or a debtor's dependant are allowable for a § 707(b)(3)(B) analysis." *In re Dowleyne*, 400 B.R. 840, 844 (Bankr. M.D. Fla. 2008). The U.S. Trustee argues that various expenses of the Debtors are excessive and that in many instances, the Debtors' stated expenses are not supported by their bank statements or bankruptcy schedules. He also submits that the Debtors' schedules and statements do not reflect their true financial condition. A review of the Debtors' stated expenses shows that many are unbelievable or unreasonable.

On their Schedule J, the Debtors listed $2,720.89 in monthly home mortgage payments, and the Debtors have now moved to a rental property and pay $1,595 per month in rent. The parties stipulated that the IRS Local Standard for housing for the Debtors' location and household size is $1,001.

The Debtors scheduled $121 per month for home maintenance (repairs and upkeep), $440 for electricity and heating fuel (natural gas/propane), $210 for telephone, $50 for water and sewer, and $75 for cable/satellite/internet. Amounts for home maintenance are not necessary because the Debtors surrendered or will surrender their

real estate and now rent their residence. Moreover, the parties stipulated that the IRS Local Standard for non-mortgage expenses for a household like the Debtors' household is $583, and that this amount includes all utilities, maintenance, repairs, telephone and cell phone services. Therefore, these expenses are reduced to $583.

The Debtors list $1,308 in expenses for food, $150 for tobacco/alcohol and $125 for school lunches, allowances and activities. The parties stipulated that the local IRS standard for food expenses for a family of the same size in the Debtors' area is only $878. Reducing their food expenses to comport with the agreed IRS standard and adding a modest and reasonable amount for children's activities, yields total expenses of about $978.

In light of the Debtors' declaration that their combined household wardrobe is valued at $260, a monthly expense of $305 for clothing, laundry and dry cleaning appears excessive and this Court reduces that expense to $200.

The Debtors listed excessive monthly expenses of $700.76 for payments on their two automobiles. The parties agreed that they entered into a reaffirmation agreement pay the lender for their 2008 Nissan Maxima $351.38 monthly for 47 months starting in September 2010. They also stipulated that the Debtors entered into a reaffirmation agreement to pay the lender for their 2007 Toyota FJ Cruiser $347.67 each month for 18 months beginning in October 2010. On September 30, 2011, a new reaffirmation for the Cruiser was filed with this Court. The new reaffirmation is nearly identical to the reaffirmation agreement from 2010; the only significant difference is the required

payment of a past due amount of $346.67.[3]  Neither of the Debtors' car payments will extend for 60 months.  As of October 5, 2011, the Debtors were required to pay approximately $11,946.92 ($351.38 per month for 34 months) for the Maxima and $3,475.70 ($347.67 per month for 9 months, plus an arrearage of $346.67) for the Cruiser, leaving a total of approximately $15,422.62 over the course of a 60 month plan, or about $257.04 each month.

In addition, it is unclear why the Debtors also claim transportation expenses in the amount of $635; this amount will be reduced to $478, the IRS standard operating expense for the two vehicles. Likewise, their claimed medical and dental expenses of $431 will be reduced to $300, the IRS standard for out of pocket costs.

Additional expenses claimed by the Debtors are unreasonable in light of the circumstances and have been discounted by this Court as shown below.[4]

### **Meaningful Distribution**

The Debtors' ability to pay is evident by using a comparison of the Debtors' income as reported on their Schedule I (minus the child support payments) to their claimed expenses as discounted to a reasonable amount:

| **Expenses** Category | Claimed | Reasonable Expense | **Income** |
|---|---|---|---|
| Rent or home mortgage payment | $2,720.89 | $1,001 | $8,240.93 |
| Utilities/non-mortgage home expenses | $896 | $583 | minus child |
| Food, tobacco/alcohol, school lunches | | | support of |
| Allowances and activities | $1,583 | $978 | $548 |
| Clothing, laundry and dry cleaning | $305 | $200 | |
| Medical and dental expenses | $431 | $300 | |
| Transportation | $635 | $478 | |

---

[3] The 2011 reaffirmation agreement also decreased the monthly payment amount from $347.67 to $346.67.  This Court uses the greater amount of $347.67 for the calculation of the amounts other than the arrearage.

[4] The Debtors could do additional "belt tightening" beyond that set forth herein and still provide for the necessities of their family.

| | | | |
|---|---|---|---|
| Recreation | $100 | $50 | |
| Charitable contributions | $100 | $50 | |
| Homeowner's/renters' insurance | $233 | $233 | |
| Life insurance | $385 | $385 | |
| Automobile Insurance | $168 | $168 | |
| Taxes/vehicle tags | $10 | $10 | |
| Automobile payments | $700.76 | $257.04 | |
| Alimony, Maintenance/support paid to others | $700 | $700 | |
| Cosmetics/personal hygiene | $70 | $70 | |
| Haircuts/hairstyling | $55 | $55 | |
| Home office supplies | $25 | $25 | |
| Tuition/instruction/books | $230 | $230 | |
| | $9,347.65 | $5,773.04 | $7,692.93 |

To calculate the hypothetical dividend to unsecured creditors, this Court uses the total amount of scheduled unsecured debt, $1,063,322, which is an inflated number because it assumes that every creditor files a proof of claim. The amount of $1,063,322 is calculated by adding the original scheduled unsecured debt in the amount of $1,042,072 and the amount of $21,250 included on the Amended Schedule of Unpaid Debts. A comparison of the Debtors' income and their reasonable expenses shows that they have disposable income of $1,919.89 each month, which amounts to $115,193.40 over the life of a 60 month plan. The amount of $2,051 owed for 2010 federal income taxes is first deducted from $115,193.40 because this debt has priority status, leaving disposable income of $113,142.40 over 60 months. Even using the artificially high amount of $1.063,322 for unsecured claims, the Debtors could make a distribution of 10.6% to unsecured creditors.

**Other Factors**

Examination of other factors regarding the totality of the circumstances also reveals that allowing the Debtors' case to proceed would be an abuse under

§§707(b)(1) and (3).  This is a case where the Debtors seek to use bankruptcy as a means to continue an extravagant lifestyle that they simply cannot afford.

The Debtors claim that their debt problems and, thus, their bankruptcy filing, were the result of misfortunes associated with the crash of the real estate market and the economy.  Even though it appears that Mr. Shuker experienced a significant reduction in income and the Debtors became overextended on their real estate holdings during an economic downturn, these misfortunes do not constitute calamities.  Real estate investments by their nature are speculative.  Moreover, Mr. Shuker is not without a job and the Debtors are left with a significant income that will allow them to provide for the reasonable necessities of their family.  Creditors should not be forced to bear the burden of the Debtors' unwillingness to alter their lifestyle to comport with the economic reality of their situation.  Moreover, the parties agree that Mr. Shuker's current income is relatively stable.

In February 2009, the day after Mr. Shuker's previous chapter 7 case was dismissed, the Debtors purchased a 2008 Nissan Maxima.  They also purchased a 2007 Toyota FJ Cruiser in October 2006.  There was no need for the Debtors to make such purchases under their financial circumstances at the time.  Moreover as the U.S. Trustee explained, the Debtors' maintenance of two automobile loans, of cars that were recently purchased, appears to be unreasonable.

The Debtors are not eligible to convert their case to a chapter 13 case, but the unavailability of chapter 13 is not determinative under the facts of this case.  The Debtors may be eligible to be debtors in a Chapter 11 case.  The fact that the Debtors are likely to encounter additional administrative costs in a chapter 11 case, which would

likely decrease the dividend to their unsecured creditors, does not mean that they should be allowed to proceed under chapter 7 here.

## **CONCLUSION**

The Debtors have the ability to make a meaningful distribution to their creditors. Additional factors, as set forth above, further evidence this Court's decision that allowing the Debtors to proceed under chapter 7 would be abusive under §§707(b)(1) and (3). By separate order, the U.S. Trustee's Motion to Dismiss shall be GRANTED in that the Debtors' Chapter 7 case shall be dismissed.

BY THE COURT

DATED:  November 17, 2011

_____
Barry S. Schermer
U.S. Bankruptcy Judge

Copies to:
Debtors - Jeffrey and Nicole Shuker
Debtors' Attorney - David Fineman
Trustee -  Diane L. Jensen
US Trustee